UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| REGINA JO HOLDREAD, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Case No. 3:17-CV-656 JD |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Regina Jo Holdread suffers from a host of physical and mental health problems, including but not limited to chronic obstructive pulmonary disease ("COPD"), coronary artery disease, hypertension, bilateral knee pain (with surgical intervention), hepatitis C, chronic liver disease, affective disorder, anxiety disorder, and severe major depressive disorder. She applied for social security disability benefits, claiming that she was no longer able to work as of May 18, 2011, but the Commissioner denied her application. Holdread filed this action seeking review of that decision. For the following reasons, the Court reverses and remands this action for further proceedings.

### I. FACTUAL BACKGROUND

Holdread's medical records date back to mid-2011 and are extensively summarized by the ALJ (Tr. 36-45). Holdread's family doctor has opined that her coronary artery disease with chronic chest pain, hepatitis C, and severe depression and anxiety would likely cause her to miss more than two days of work per month and would make it difficult for her to lift anything (Tr. 717). Holdread's more recent treating doctor wants Holdread to see specialists for her chest pain, COPD, bilateral knee pain, and hepatitis (Tr. 65-70), but Holdread can't afford such treatment

because she lost her Medicaid coverage. She also can't afford physical therapy for her knees or the medicine needed to treat her hepatitis.

The ALJ found that Holdread's severe impairments of hepatitis C, chronic liver disease, affective disorder, and anxiety disorder, in combination with her non-severe impairments, did not render Holdread disabled because she was still able to perform light exertional work (subject to a number of restrictions, including performance of only simple, routine tasks with no public interaction). Based on testimony from a vocational expert, the ALJ concluded that a person with that residual functional capacity would still be able to perform work as a dishwasher, assembler, and packer. The VE testified that consistent with the Dictionary of Occupational Titles (and the companion volume of the Selected Characteristics of Occupations), these jobs existed in significant numbers. Given the VE's testimony, the ALJ found that Holdread was not disabled and denied her claim. The Appeals Council denied review, so Holdread filed this action, asking that the Commissioner's decision be reversed with an award of benefits or remanded for further proceedings.

## II. STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could

differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. While the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III. DISCUSSION

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential

evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, then in between steps three and four, the ALJ must then assess the claimant's residual functional capacity ("RFC"), which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The ALJ then uses the RFC to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Holdread argues that reversal is required given the ALJ's failure to consider her bilateral knee pain as a severe impairment and failure to support the credibility determination with substantial evidence. The Court agrees that remand is required because the RFC analysis was

affected by the ALJ's credibility analysis, which itself was not supported by substantial evidence. Given this shortcoming, the Court leaves it to the parties to address on remand whether Holdread's knee pain should be considered a severe impairment or would otherwise further limit Holdread's ability to perform work.

According to Holdread, her knee pain keeps her from driving and cooking (Tr. 63-76). Moreover, her husband does the majority of the laundry and the housework. Holdread must take breaks while washing dishes because she can only stand for roughly five minutes. She can only walk for up to three minutes before needing to rest and she can only sit for an hour before needing to standup. Holdread reported having to keep her legs elevated and iced for several hours (several times a week) due to swelling and pain. She is unable to bend or squat and then get back up on her own. She also can't get down and play with her grandkids anymore. Holdread reported becoming short of breath with physical activity and having difficulty sleeping due to her COPD. She also suffers from depression and anxiety with biweekly panic attacks that are alleviated with medication. Holdread explained that as soon as she receives insurance, she intends to see several specialists that her doctor has recommended. She also plans to attend physical therapy for her knees and obtain the expensive medication required for treating her hepatitis and pain. The ALJ found that Holdread's conditions could reasonably be expected to cause some of her alleged symptoms, but that her symptoms and limitations "were not entirely consistent with the medical evidence and other evidence in the record" (Tr. 45).

Because the ALJ is in the best position to determine a witness' truthfulness and forthrightness, the Court will not overturn an ALJ's credibility determination unless it is patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). The ALJ's decision must, however, provide specific reasons for the finding on credibility, supported by the evidence in the

5

case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. SSR 16-3p (superseding SSR 96-7p)[1]; *see also Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). An ALJ's failure to give specific reasons for a credibility finding, supported by substantial evidence, is grounds for remand. *Pepper*, 712 F.3d at 367; *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009). An ALJ also may not ignore evidence. *Myles*, 582 F.3d at 676.

Here, the ALJ's credibility analysis was flawed in multiple respects. First, in discounting Holdread's allegations concerning the persistence and limiting effects of her symptoms and ability to perform activities of daily living, the ALJ explained that Holdread's "issues received generally conservative treatment" (Tr. 45). However, the ALJ committed error here by failing to explain how she reached this conclusion in spite of evidence in the record that otherwise provides context for Holdread's "conservative" treatment. *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016) (noting that the ALJ erred by basing his adverse credibility determination on the claimant's decision not to undergo surgery without inquiring into the reasons for doing so); *Myles*, 582 F.3d at 677 (stating that "the ALJ was required by Social Security Rulings to consider explanations for instances where [the plaintiff] did not keep up with her treatment"). In faulting Holdread for not more aggressively treating her conditions, the ALJ did not discuss how Holdread's loss of Medicaid factored in to Holdread's receipt of only "conservative treatment." That omission is particularly notable because Holdread specifically testified that once she obtains

---

[1] In March 2016, the Social Security Administration issued SSR 16-3p, which supersedes SSR 96-7p. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). SSR 96-7p referred to a claimant's "credibility," but SSR 16-3p removed that term in order to "clarify that subjective symptom evaluation is not an examination of the individual's character." SSR 16-3p. However, under either SSR version, the outcome in this case would be the same.

insurance, she intends to seek treatment by various specialists recommended by her treating physician. She also plans to attend physical therapy and obtain medication that she can't afford, but needs. But, again, the ALJ made no mention of these facts when she criticized Holdread for failing to undergo more extensive treatment.

The second problem with the ALJ's credibility analysis is the ALJ's heavy reliance on Holdread's ability to perform activities of daily living without discussing the limitations that Holdread confronted. After recounting Holdread's ability to attend to her personal hygiene, prepare simple meals, do laundry, and ride in a car, the ALJ noted that Holdread "appeared capable of executing a number of important, domestic, and community activities of daily living independently" and performed "several activities" that were "inconsistent with the total inability to work." (Tr. 33, 45). Yet, the Seventh Circuit has "repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013); *Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014) ("[I]t is proper for the Social Security Administration to consider a claimant's daily activities in judging disability, but we have urged caution in equating these activities with the challenges of daily employment in a competitive environment . . . ."); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office."). The ALJ erred here by reasoning (without adequate explanation) that Holdread's limited daily activities equate to an ability to work full-time. Moreover, the ALJ failed to address *how* Holdread performs tasks and the toll that activities take on her. In that vein, Holdread indicated that she can only perform physical tasks with various breaks due to her knee pain and shortness of breath. She also reported

7

that too much physical activity results in leg pain and swelling that requires her to lie down and elevate her legs. *See, e.g., Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) (no employer is likely to hire a person who must stop working and lie down). In short, the ALJ should have acknowledged the various limitations or accommodations that allow Holdread to perform daily activities, and explained how Holdread's daily activities (as performed) translated into an ability to perform full-time light work with normal breaks and no production limitations. *See Craft*, 539 F.3d at 680.

Third and finally, the ALJ stated that Holdread's symptoms and limitations were "not entirely consistent with the medical evidence and other evidence in the record" (Tr. 45). But the ALJ did not then identify any specific objective evidence that contradicted Holdread's statements. Instead, the ALJ's decision refers generally and ambiguously to the lengthy summary of the medical evidence, without citing to any particular exhibits as providing a basis for questioning Holdread's credibility. The lack of record citations makes it difficult, if not impossible, to trace the ALJ's reasoning at this point in the credibility analysis. In this respect, the ALJ wholly failed to build the requisite "logical bridge" from the evidence and her credibility determination, thereby necessitating remand.[2] *See Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008). Thus, the ALJ's failure to specifically identify the record evidence which undermined Holdread's claimed limitations reveals that the credibility finding is not supported by substantial evidence.

---

[2] Moreover, for the purpose of remand, it should also be noted that the Seventh Circuit has held that an "ALJ may not discount a claimant's credibility just because her claims of pain are unsupported by significant physical and diagnostic examination results." *Pierce v. Colvin*, 739 F.3d 1046, 1049–50 (7th Cir. 2014) (collecting sources); *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004) ("[O]nce the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence.").

The problems with the ALJ's credibility analysis (which ultimately affected the assessed RFC), cannot be cured by the ALJ's giving of significant weight to the reviewing state agent opinions in this case. The regulations indicate that because non-examining sources have no examining or treating relationship with the claimant, "the weight [the ALJ] will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions." 20 C.F.R. § 404.1527(c)(3). Here, the state agents conducted a file review in late 2014 and early 2015. They never examined Holdread and they did not have the benefit of Holdread's testimony in rendering their opinions. Moreover, their opinions were made prior to Dr. Stuckey-Schrock's March 30, 2015 treating physician opinion indicating that Holdread's conditions would require her to miss more than two days of work per month—which the VE testified would eliminate employment.[3] Yet, in adopting the reviewing doctors' opinions, all the ALJ said was that they "are consistent with the claimant's treatment history and other evidence of record" (R. 43, 45), without identifying the records relied on by the ALJ at this point in the analysis. Thus, the ALJ's decision does not adequately articulate why the reviewing opinions should be credited over other record evidence.

For each of the reasons discussed, the Court cannot conclude that the ALJ's decision to discount Holdread's self-reports were supported by substantial evidence. That error is not harmless. If, on remand, the ALJ decides to give greater weight to Holdread's subjective complaints and limitations (or to the opinion of the treating doctor), that could result in a more

---

[3] On remand, the ALJ should adequately articulate how the treating doctor's opinion is inconsistent with the record (including the same doctor's examination records dating back to 2012), by referring specifically to the records relied upon. *See Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(c)(1)-(5)).

restrictive RFC finding.[4] Accordingly, the remedy for the shortcomings noted herein is further consideration, not an award of benefits as requested by counsel.

## IV. CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to enter judgment accordingly.

SO ORDERED.

ENTERED: September 11, 2018

                                                       /s/ JON E. DEGUILIO
                                                       Judge
                                                       United States District Court

---

[4] Per plaintiff's counsel, if Holdread's RFC was limited to the performance of sedentary work, the Medical-Vocational Guidelines would indicate that given her age, education, relevant past work, and lack of transferable skills, then she would ordinarily be considered disabled. 20 C.F.R. pt. 404, Subpt. P, Appendix 2, grid rules 201.12, 201.14. This further demonstrates the importance of having adequately supported credibility and RFC findings for Holdread. Moreover, given the existence of medical evidence supporting the potential for claimant's having an ongoing substance addiction, should the ALJ find that Holdread is disabled, then the ALJ may need to explain whether alcoholism is a contributing factor material to the determination of disability. 20 C.F.R. § 404.1535.